## William H. Quinlan et al. v. George Keen et al.

1. AGENT—*When His Knowledge Does Not Affect His Principal.*— The fact that an agent for the sale of lands had knowledge of the existence of a syndicate for the purchase and resale of such lands can not affect his principal.

**Bill to Rescind a Contract.**—Error to the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed November 2, 1897.

J. D. HUBBARD, attorney for plaintiffs in error.

DUPEE, JUDAH, WILLARD & WOLF, attorneys for defendants in error.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Plaintiffs in error, composing the members of a syndicate, filed their bill December 31, 1893, by which they seek the cancellation and rescission of the option contracts below described, and a decree that defendants in error repay them the money paid by plaintiffs in error in the original purchase of the lands in question, or that plaintiffs in error should be allowed the benefit of any profits which Clarke & Co. might make or might have made in connection with the transaction detailed below. In the trial court, as well as in this court, plaintiffs in error admitted in argument they could not be allowed the latter relief, and waived it.

The record shows the following facts, in substance, to wit:

In the latter part of the year 1890, plaintiffs in error entered into an association having for its object the purchase and resale of certain lands in the village of Morgan Park, Cook county, Illinois. This association was organized by Benjamin F. Clarke and George R. Clarke, his half-brother, who induced the various parties to become members and to invest their money in the enterprise. George R. Clarke was

widely and favorably known in the community, and to many of the persons who composed the association. He subscribed for one-quarter of the original capital, and was one of the most active participants in the affairs of the concern. He was elected one of the board of managers and appointed treasurer, with entire charge of its funds. Benjamin F. Clarke was elected secretary, with the usual duties pertaining to the office. The whole plan of this syndicate, originated and was mapped out between these two and in the office of the latter, and the name of George R. Clarke headed the list of subscribers to the articles of association. He was most active in the meetings of the association, prepared the prospectus which was used in obtaining members and selling stock, was its chief promoter and most active manager.

The land was purchased from one George C. Walker, who held the same as trustee for the stockholders of the Blue Island Land & Building Company, a corporation organized under a special charter of the Illinois legislature, and which charter had expired in 1889. Title was taken in the name of William H. Quinlan, for the benefit of the members of the syndicate and for convenience of transfer, but the fact that Quinlan acted in a trust capacity does not appear to have been known to Walker at that time, nor until about one year later. There is no proof that plaintiffs in error didn't know that Clarke & Co. were the agents for the sale of the land, except as hereinafter stated.

The purchase price was $200,000, $50,000 being paid in cash and the notes of Quinlan given for $150,000, payable in installments of $50,000 each in one, two and three years respectively, with interest at six per cent. At the expiration of the first year the land was still unsold; some of the members were unable to contribute their share of the amount of money which then fell due, and the others could not make payments upon their respective parcels because there had been no partition among the members.

After long negotiation it was agreed that Quinlan should reconvey the land to George C. Walker as trustee, and that·

all of the members of the association should execute quit-claim deeds and surrender their certificates of stock, and that Mr. Walker should execute eighteen options of purchase running to Charles L. Morgan, one of the members of the syndicate, providing that said Morgan or his assigns might purchase the land described therein at certain prices therein stated at any time on or before December 31, 1893.

This plan was finally consummated on or about April 11, 1892.

In May of the same year George R. Clarke died and left his widow, Sarah D. Clarke, his sole legatee and devisee, and Joseph A. Davol, another of the defendants, died prior to the filing of the bill. Benjamin F. Clarke had made a general assignment for the benefit of his creditors and had absconded, and it was impossible to obtain his testimony. William B. Keen, Jr., and George Keen, two other defendants, were so sick that their testimony could not be obtained, and under the statute each and all of the complainants were disqualified from testifying.

About thirty days before the option contracts expired the syndicate held a meeting at the office of its attorney, and it was then and there stated that George R. Clarke, then deceased, was largely interested in the lands bought by the syndicate, through his connection with the firm of Clarke & Co. This was the first time the fact had ever been mentioned at any meeting of the syndicate. This testimony is given by two witnesses called on behalf of the complainants.

George R. Clarke was a member of the firm of George R. Clarke & Co., which firm was composed of George R. Clarke, who owned a one-half interest, George Keen, one-sixth, William B. Keen, Jr., one-sixth, and Joseph A. Davol, one-sixth interest.

There existed a sales contract between the firm of Clarke & Co. and the Blue Island Land and Building Company, which was continually in force from April 15, 1886, and which expired April 30, 1891, under which Clarke & Co. were to receive twenty per cent as a commission on all

lands sold for the Building Company up to a certain upset price mentioned in the sales contract, and that all sums in addition to the upset price were to be divided equally between Clarke & Co. and the Building Company, but Clarke & Co. were to pay all advertising expenses and also to furnish money to build houses as needed, and were never to acquire the land nor any interest in it. The amount of money Clarke & Co. would have been entitled to receive on the sale in question, if it had been consummated, was $80,-343.95, and they did actually receive it out of the first cash payment, and what was advanced to them by Walker subsequently.

In April, 1892, George R. Clarke and the members of the firm of Clarke & Co., on the one hand, and George C. Walker, as trustee for the Building Company, on the other hand, entered into a certain settlement contract, under which it was finally agreed in substance that Clarke & Co. should have advanced to them their share of the profits paid by the syndicate, and that in case the syndicate failed to exercise the options of repurchase that they should be entitled to buy the lands in question; deducting their profits the price would have been a little over half the price to the syndicate.

This settlement contract was entered into by Clarke and his partners on the one hand, and at about the time when Clarke as a partner in the land association was engaged in effecting a settlement with Walker on behalf of said association.

The firm of Clarke & Co. for years occupied a suite of offices in common with George C. Walker, and were intimately associated in business affairs, and the members of the firm were all related to Walker by blood or marriage.

Immediately after the option contracts were executed Walker resigned as trustee for the Building Company, and George Keen, one of the members of the firm of Clarke & Co., became his successor, and while he had ostensibly assigned his interest in that firm to his brother, William B. Keen, Jr., yet it is not claimed that the assignment was for value or was a *bona fide* assignment.

Walker, as trustee, and the members of the firm of Clarke & Co., claim that they did not know and were under no obligation to inquire whether or not George R. Clarke had explained his interest and the interest of the firm in the lands before the purchase of the same by the association.

Walker did not know of the existence of the syndicate until after the sale and after the delivery of the deed to Quinlan.

Walker was in California from January 10, 1891, to April 15, 1891, but he left Joseph A. Davol and George Keen, two of the members of the firm of Clarke & Co., to represent him in his absence, and in fact he was represented during his absence by George Keen, who, within a short time after the consummation of this sale, became trustee in Walker's place.

It appears from the testimony that George Keen received the various sums of money as they were paid in to him by Benjamin F. Clarke, on behalf of the syndicate; the payments were made by five checks aggregating $35,813.50, which corresponds closely to the amount received by Benjamin F. Clarke from the various members of the syndicate, as shown by his books of original entry, to wit, $34,960. The difference between this amount and the $50,000, the first cash payment to Walker, would represent substantially the amount of George R. Clarke's share, to wit, a one-fourth part of the purchase price, amounting to $12,500. George R. Clarke continued to transfer portions of his interest at different times, but it is impossible to ascertain from the record the exact amount which he held during the time when these payments were being made.

George Keen made the entries in Walker's books in his absence in his behalf, and as the agent of Walker, trustee, and delivered the deeds in question about February 23, 1891, in the absence of Walker.

The case was heard upon the bill and amendments, answers of the several defendants, and replications to such answers. A cross-bill by Joseph A. Davol and William B. Keen, Jr., and a cross-bill of Sarah D. Clarke were filed, and

also answers to said cross-bills respectively, and replications to such answers, but at the hearing the cross-bill of Davol and Keen was dismissed on their motion, and the cross-bill of Sarah D. Clarke was dismissed for want of prosecution.

The chancellor entered a decree dismissing complainant's bill as amended for want of equity, to reverse which complainants sued out a writ of error in this court.

Plaintiffs in error claim relief on the alleged grounds that they were grossly deceived by George R. Clarke as to the value and salable character of the lands; that he was a promoter and active member of the syndicate of which plaintiffs in error were also members; that the syndicate was organized in pursuance of a plan on the part of Clarke & Co., formed and carried out by them for the purpose of selling the lands at a price greatly in excess of their market value, in order that they might divide among themselves the profits illegally obtained; that this plan was known to Walker, and that the members of the firm of Clarke & Co. carefully concealed from plaintiffs in error the true nature of the relations existing between said firm and Walker, and also concealed the interest which the firm of Clarke & Co. should acquire in said lands upon the sale thereof; that plaintiffs in error first learned of the relations of Clarke & Co. to Walker within thirty days before their bill was filed, and because of the fraud practiced on them by Clarke in the purchase of the land and making of the option contracts, they are entitled to rescind said contracts and recover the purchase money paid by them.

The record fails to show but that plaintiffs in error knew, from the inception of the dealings between them and Clarke, that the firm of Clarke & Co. were the agents for the sale of the land in question, and that there was any concealment or fraud of any kind in this regard. All the evidence pointed out by counsel for plaintiffs in error on this point could be absolutely true and still plaintiffs in error know the fact. The fact that Clarke & Co. were to receive a larger compensation for the sale of this land than is ordinarily paid to real estate agents, can make no difference

whatever, unless there is shown some fraudulent plan or scheme on their part in which Walker participated in some way.

If plaintiffs in error knew of the agency of Clarke for the sale of the lands, and that he was taking a one-fourth interest in the syndicate, they must take notice of the promptings of human nature in the line of interest. The principle is the same whether Clarke's profit by the sale was to be five or fifty per cent. A very different question would be presented had there been proof that there was a concealment of Clarke's agency. For aught that is shown plaintiffs in error knew, from the beginning, of the agency of Clarke & Co. It is unfortunate, perhaps, that the death of Clarke and Davol have debarred them from testifying, but that can not answer for proof.

If plaintiffs in error are entitled to any relief, their claim to the alternate relief prayed in the bill having been waived, it must be based on some participation of Walker in the alleged plan to deceive and defraud them.

The record fails to show that Walker knew of the existence of a syndicate until long after the sale was made and the deed delivered to Quinlan. The fact that his agents for the sale of the lands knew of the existence of the syndicate, can not affect him. If that were the law, an owner could never know when he had made a sale through his agents that would be binding on the purchaser.

We have not discussed the authorities cited by counsel for plaintiffs in error, because we are of opinion they are not applicable to the facts of this case and the relief sought.

The decree of the Circuit Court is affirmed.